UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REBECCA ANTHONY,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security Administration,<br><br>            Defendant. | CASE NO.   **C07-5363FDB**<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 16, 2008 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administrative decision denying Plaintiff's application for social security benefits.

INTRODUCTION

Plaintiff, Rebecca Anthony, was born in 1972. Plaintiff graduated from high school and took some college classes. She worked in the past in child care, as a telephone solicitor, and as an office clerk, but all the work experience was very limited and a relatively long time ago.

On June 3, 2004, Plaintiff filed an application for Supplemental Security Income. The claim was denied initially and on reconsideration. Following a timely request for hearing, a hearing was held on October 12, 2006, before an ALJ. On December 19, 2006, the ALJ issued a decision finding Plaintiff not disabled (Tr. 13- 26). Plaintiff made timely appeal to the Appeals Council which denied request for review on May 24, 2007, making the ALJ's decision the administration's final determination.

Plaintiff filed a Complaint with the Court challenging the denial of her applications for benefits on July 23, 2007. Specifically, plaintiff raised one issue, arguing the ALJ failed to properly consider the medical evidence provide by Dr. Truschel regarding her mental limitations. Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions were properly supported by substantial evidence. After reviewing the record, the undersigned finds the ALJ properly considered Dr. Truschel's opinion in light of the entire record.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ's residual functional capacity finding was made in error because the ALJ failed to properly consider Dr. Truschel's opinion. On October 16, 2004, Dr. Truschel, an examining physician, assessed Plaintiff's GAF to be 40-45, and he wrote:

> **DISCUSSION/PROGNOSIS:** The claimant has had treatment for mood disorder but it has been very unaggressive. It is quite possible that given the cyclothymic nature of her mood swings, that a mood stabilizer might dial in more effect than the Wellbutrin by itself is capable of having. It is possible then, with the removal of some of the more extreme ranges, she would do better. It is also very likely that some of this system imbalance is set into place by the continuing nagging presence of high blood sugars, which she knows definitely affect her energy, her sleep, and by affecting her sleep, affect her ability to coordinate activities during the day, her sense of stress, her anxiety, and gradually adding into her depression. Without more aggressive treatment for her medical conditions, it is unlikely that strictly aiming at mood stabilizers or antidepressants, will pull this situation back and it would also be helpful to think of how to get her son, Aidan's assistance for some of the activities she has, if possible.
>
> **FUNCTIONAL ASSESSMENT/MEDICAL SOURCE STATEMENT:** The claimant is capable of managing her own funds. She manages the entire family's funds without mistakes. Her husband is unable.
>
> The claimant is able to perform simple and repetitive tasks and even to keep her household organized. She is episodically overwhelmed in it. She has trouble being very irritable when people push her. She feels as though she is pushed to the max and will blow up and become somewhat belligerent and defens[ive] if pushed harder or expected to do things, so it is very conceivable that she would have a great deal of difficulty accepting instructions from supervisors or to perform work activities on a constant basis under someone's supervision. Right now, with the intermittent de-energized and sleep difficulties that she has, the physical problems that compound that, it is very unlikely that she would be able to maintain regular attendance in the workplace without interruption from these mood events where she feels totally hopeless.

(Tr. 226-227).

With respect to Plaintiff's mental impairment, the ALJ found she suffered from depression, but that it was well-controlled when she was compliant with medical advice (Tr. 24). With regard to Plaintiff's residual functional capacity and her mental limitations, the ALJ asked the vocational expert to presume Plaintiff would be able to understand, complete and remember simple one to two-step tasks, with occasional contact with the public and clear routine work. The ALJ's finding is supported by the State Agency physicians, Dr. van Dam and Dr. Eather. The ALJ noted that in November 2004, these physicians found Plaintiff was able to care for her children, and manage household chores and finances on a regular basis (Tr. 21-22, 258). In addition, the ALJ noted Plaintiff was found able to understand, remember, and complete 1-2 step tasks, sustain attention on simple tasks and maintain a schedule with some direction (Tr. 21-22, 258). Their report also supports the ALJ's finding that contact with the

1 public should be limited but she could interact with a supervisor and a regular group of coworkers (Tr.
2 21-22, 258).

3     The ALJ specifically rejected the more restrictive opinion of Dr. Truschel stating:

4     The undersigned notes, however, that the claimant was extremely inconsistent in her reports to Dr. Truschel and to her treating sources and during the consultative physical
5 examination. For example, she stated that Wellbutrin had no effect, yet she described its effects to her treating source as a "miracle". Further, she told Dr. Song that she could
6 perform her daily activities with no problem and said just the opposite to Dr. Truschel and during her testimony. Further she maintained that she was the only person to take care of
7 the household but that is inconsistent with her testimony.

8 Tr. 21. The ALJ provided specific and legitimate reasons that are supported by substantial evidence in
9 the record to reject Dr. Truschel's opinion.

10     The medical record as a whole demonstrates that Plaintiff's impairments were not as severe as
11 assessed by Dr. Truschel.  The ALJ correctly analyzed the affects of Plaintiff's blood sugar levels and the
12 issue of compliance with medical advice to better control her diabetes, specifically noting the opinions
13 and comments of Dr. Grumer and Dr. Song.  As noted above, the ALJ's decision is clearly supported by
14 Dr. van Dam and Dr. Eather

15     The ALJ properly discredited Dr. Truschel's opinion, noting first that Plaintiff had been
16 "inconsistent in her reports to Dr. Truschel, to her treating sources and during the consultative physical
17 examination" (Tr. 21). The ALJ correctly noted that Plaintiff had reported to Dr. Truschel that Wellbutrin
18 had no effect, however, she reported just the opposite to her treating sources (Tr. 19, 21, 200, 222-227).
19 On September 29, 2003, Plaintiff reported that she no longer felt "mopey" and that Wellbutrin was "like a
20 miracle" and that their had been a "180 [degree] difference" in her mental state (Tr. 19, 21, 200,
21 222-227).  On February 19, 2004, Dr. Grumer suggested that the Wellbutrin be increased from 100 mg
22 twice a day to 150 mg twice a day (Tr. 250, 253), and at that time, Dr. Grumer assessed a Global
23 Assessment of Functioning (GAF) score of 65.   The ALJ reasonably interpreted the medical evidence
24 suggesting Wellbutrin had very significant positive effect on Plaintiff's mental impairments.  On March
25 23, 2004, Plaintiff was noted to be doing "much better" on the increased doses of Wellbutrin with "no
26 major highs and much more on an even keel" (Tr. 21, 249). The  records indicate that Plaintiff was
27 "pleased [with the] results" (Tr. 21, 249). Moreover, on February 2004, Plaintiff reported to Jerry J.
28 Sullivan, M.D., that she was currently on Wellbutrin and that her depression was controlled (Tr. 21,

REPORT AND RECOMMENDATION
Page - 4

1  236-237).

2  To further support his analysis of Dr. Truschel's opinion the ALJ also noted Plaintiff was evaluated on September 25, 2004, by Dr. Song. (Tr. 19-20, 218-221). At that time Dr. Song noted that Plaintiff had indicted that she had been doing very well and denied mental difficulties except for mood swings and lifestyle stresses (Tr. 19, 21, 218-222). She also admitted that she was able to conduct all normal activities of daily living without difficulty (Tr. 19, 21, 219). Three weeks later, on October 16, 2004, Plaintiff reported the opposite to Dr. Truschel (Tr. 222-227). The statements Plaintiff made to Dr. Song were reasonably interpreted by the ALJ as being contradictory to what she reported to Dr. Truschel.

In further discrediting Plaintiff as well as Dr. Truschel's reliance on her statements, the ALJ properly noted Plaintiff reported to Dr. Truschel that she was the only person to take care of the household, but that this statement was inconsistent with the record (Tr. 21, 224). Plaintiff stated on July 23, 2004, and January 27, 2005, that she does have others (her husband and children) assist her with the household duties (Tr. 94, 119). Moreover, she testified at the hearing that her husband assisted with the payment of bills, and that all family members assisted with caring for the family dog (Tr. 400, 404). The ALJ properly rejected or discredited Dr. Truschel's opinion which was premised upon Plaintiff's discredited subjective complaints.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly considered the medical evidence, and the Court should affirm the administration's decision to deny Plaintiff's application for social security benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 16, 2008**, as noted in the caption.

DATED this 23rd day of April, 2008.

                                                      */s/ J. Kelley Arnold*
                                                      J. Kelley Arnold
                                                     U.S. Magistrate Judge